IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BRANDON Q.,[1]

          Plaintiff,

v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

          Defendant.

No. 6:23-cv-01102-HZ

OPINION & ORDER

Mark A. Manning
Wells, Manning, Eitenmiller & Taylor, P.C.
474 Willamette Street
Eugene, OR 97401

    Attorneys for Plaintiff

Kevin C. Danielson
Assistant United States Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

1 – OPINION & ORDER

Diana Lin
Social Security Administration
Office of Program Litigation, Office 3
6401 Security Boulevard
Baltimore, MD 21235

    Attorneys for Defendant

HERNÁNDEZ, District Judge:

    Plaintiff Brandon Q. brings this action seeking judicial review of the Commissioner's final decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g)(incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for payment of benefits.

## PROCEDURAL BACKGROUND

    Plaintiff applied for SSI on August 21, 2020, and for DIB on September 9, 2020, alleging an onset date of August 1, 2017. Tr. 13, 233-34.[2] Plaintiff's date last insured ("DLI") is September 30, 2024. His applications were denied initially and on reconsideration.

    On May 18, 2022, Plaintiff amended his alleged onset date to January 31, 2020. Tr. 252. On June 8, 2022, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 31-59. On July 20, 2022, the ALJ found Plaintiff not disabled. Tr. 10-25. The Appeals Council denied review. Tr. 1-6.

## FACTUAL BACKGROUND

    Plaintiff alleges disability based on "[b]ipolar, depression, anxiety, previous suicide attempts, hard of hearing in both ears (wears hearing aids)." Tr. 62. At the time of his alleged

---

[2] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record, filed herein as Docket No. 8.

onset date, Plaintiff was 32 years old. Tr. 233. Plaintiff has "some college" education and past relevant work experience as a box maker, material handler, grinder-chipper, foundry worker, and packager. Tr. 52-53.

## SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work."

3 – OPINION & ORDER

20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. § 404.1520(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that exists in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1566.

## THE ALJ'S DECISION

At step one, the ALJ noted that although Plaintiff worked after his January 31, 2020 alleged onset date, he did not engage in substantial gainful activity. Tr. 16. At steps two and three, the ALJ determined that Plaintiff has the severe impairments of bipolar disorder, depression, sensorineural hearing loss, and insomnia. Tr. 16. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 16. The ALJ concluded that Plaintiff has the residual functional capacity to perform a "full range of work at all exertional levels" with the following nonexertional limitations:

> [Plaintiff] can never climb ladders, ropes or scaffolds. He can never work at unprotected heights [or] work with dangerous machinery. [Plaintiff] is limited to a work environment with a moderate noise level or less. [Plaintiff] is able to understand, remember and carryout simple, routine tasks with only 1 or 2 step operations. His use of judgment is limited to the performance of simple, work-related decisions. He is capable of occasional interaction with coworkers and the public. With respect to dealing with changes in the work setting, he is limited to simple, work-related decision making. [Plaintiff] would be expected to be off task 5% of the day in addition to customary work breaks.

Tr. 18-19. At step four, the ALJ concluded that Plaintiff cannot perform his past relevant work. Tr. 23. At step five, the ALJ found that Plaintiff could perform other work in the national economy. Tr. 24. The ALJ, therefore, concluded that Plaintiff is not disabled. Tr. 25.

**STANDARD OF REVIEW**

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

**DISCUSSION**

Plaintiff contends the ALJ erred when he (1) partially rejecting the lay-witness statement of Plaintiff's brother, Jesse Q. and (2) found the opinion of Joseph Simon, M.D.,, to be unpersuasive in part.

**I.    Lay Witness Testimony**

Plaintiff alleges the ALJ erred when he failed to give legally sufficient reasons for partially rejecting the lay-witness statement of Jesse Q.

"Lay testimony as to a claimant's symptoms is competent evidence that the Secretary must take into account." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citation

omitted); 20 C.F.R. § 404.1529(c)(1) ("In evaluating the intensity and persistence of your symptoms, we consider all of the available evidence from your medical sources and nonmedical sources about how your symptoms affect you."). Under the 2017 regulations, the ALJ is not "required to articulate how [they] considered evidence from nonmedical sources" using the same criteria required for the evaluation of medical sources. 20 C.F.R. § 404.1520c(d). The Ninth Circuit has "not yet addressed whether an ALJ is required to provide germane reasons for discounting lay witnesses under the new regulations." *Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *2 (9th Cir. May 10, 2024). This Court and many district courts in the Ninth Circuit, however, have held the ALJ must still articulate the assessment of lay witness statements. *See, e.g., Rebecca F. v. Comm'r, Soc. Sec. Admin.,* No. 6:23-CV-00988-HZ, 2024 WL 2151939, at *4 (D. Or. May 14, 2024); *Daniel T. v. O'Malley*, No. 3:22-CV-1479-SI, 2024 WL 1636459, at *8 (D. Or. Apr. 16, 2024); *Christopher M. v. Comm'r, Soc. Sec. Admin.*, No. 6:22-cv-01378-SB, 2023 WL 8827678, at *10 (D. Or. Dec. 21, 2023); *Jerald H. v. Comm'r of Soc. Sec.*, No. 3:22-cv-05855-GJL, 2023 WL 6533477, at *4 (W.D. Wash. Oct. 6, 2023); *Gardner v. Comm'r of Soc. Sec. Admin.*, No. CV-22-00321-TUC-LCK, 2023 WL 6173220, at *6 (D. Ariz. Sept. 21, 2023); *Joseph L. S. v. Kijakazi,* No. 5:23-cv-00006-BFM, 2023 WL 5611408, at *5 (C.D. Cal. Aug. 30, 2023).

The ALJ must give reasons "germane to the witness" when discounting the testimony of lay witnesses. *Valentine,* 574 F.3d at 694. But the ALJ is not required "to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114, *superseded on other grounds by* 20 C.F.R. § 404.1502(a). If the ALJ gives valid germane reasons for rejecting testimony from one witness, the ALJ may refer only to those reasons when rejecting similar testimony by a different witness. *Id*. Additionally, where "lay witness testimony does not

6 – OPINION & ORDER

describe any limitations not already described by the claimant, and the ALJ's well-supported reasons for rejecting the claimant's testimony apply equally well to the lay witness testimony," any error by the ALJ in failing to discuss the lay testimony is harmless. *Id.* at 1117, 1122.

Jesse Q. completed an Adult Function Report on June 25, 2021, in which he indicated Plaintiff's "depression inhibits his ability to function. He goes through severe mental health episodes requiring hospitalization. . . . He is unable to care for himself or hold stable employment." Tr. 297. He stated Plaintiff "does not wash [his] clothes and will [wear] same clothes day after day," his "hair is often unkempt," and he has a "difficult time managing medications or medical appointments." Tr. 298. Plaintiff "will often refuse taking medications and refill prescriptions. Does not see the long term value." Tr. 299. Plaintiff cannot pay bills, handle a savings account, or use a checkbook because he "does not follow through on debts, often has no restraint with spending savings." Tr. 300. Plaintiff "cannot maintain social relationships due to illness. Often in [his] own reality." Tr. 302. Plaintiff does not do well with written or spoken instructions and "will not complete [them] without supervision." *Id.* "Stress causes [Plaintiff to have] manic episodes and develops into full psychosis" including "delusions and hallucinations requiring long term hospitalization." Tr. 303.

The ALJ considered Jesse Q.'s statement but found the "RFC is generally consistent with the[] statement[], as it includes limitations in the areas identified." Tr. 22. The ALJ found that "[t]he RFC differs in the degree of limitation the claimant is experiencing . . . [and] is supported by the longitudinal medical evidence showing improved functioning with adherence to prescribed treatment." Tr. 22-23. The ALJ, however, failed to address the portion of Jesse Q.'s statement that is inconsistent with the RFC or note how the longitudinal medical evidence contradicted Jesse Q.'s statements. The Ninth Circuit has made clear that that is impermissible to

7 – OPINION & ORDER

disregard lay witness testimony solely because it is not fully supported by medical evidence. *Diedrich v. Berryhill*, 874 F.3d 634, 640 (9th Cir. 2017)(citing *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009)). Lay witness testimony and medical opinions provide different insights into a claimant's capabilities, which is "precisely why [lay witness testimony] is valuable." *Id.* (citation omitted). Thus, the fact that a lay witness's testimony is not corroborated by medical records "is not a germane reason" to discount that witness's observations. *Id.* The ALJ can reject a specific piece of witness testimony based on a finding that a contrary piece of medical evidence is more credible on a particular point if he gives reasons for doing so, but he cannot reject lay witness testimony in whole simply because it provides information not found in the medical record. *Id.* Because the ALJ failed to point to any specific piece of Jesse Q.'s statement that was contradicted by a specific piece of medical evidence, the ALJ did not provide a germane basis supported by substantial evidence to reject Jesse Q.'s statement. The Court, therefore, concludes the ALJ erred when he partially rejected Jess Q.'s statement.

## II.    Medical Opinion Evidence

Plaintiff contends the ALJ erred when he found a portion of Dr. Simon's opinion to be "not persuasive." Tr. 22.

New regulations about weighing medical opinion evidence apply to claims filed on or after March 27, 2017. Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. Under the new regulations, ALJs are no longer required to give deference to any medical opinion, including treating source opinions. *Id.* Instead, the agency considers several factors. 20 C.F.R. § 404.1520c(a). These are: supportability, consistency, relationship to the claimant, specialization, and "other factors." 20

C.F.R. § 404.1520c(c)(1)-(5). The "most important" factors in the evaluation process are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2).

Under this framework, the ALJ must "articulate . . . how persuasive [they] find all of the medical opinions" from each doctor or other source. 20 C.F.R. § 404.1520c(b). In doing so, the ALJ is required to explain how supportability and consistency were considered and may explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(3). "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

On June 25, 2021, Dr. Simon completed a questionnaire and medical source statement. Dr. Simon noted Plaintiff's diagnosis of bipolar I disorder with symptoms of depression, anxiety, and mania. Tr. 642. Dr. Simon stated Plaintiff "has limitations in interpersonal skills likely leading to workplace conflicts [illegible] improving with treatment," and that Plaintiff's mental health may contribute to > 2 absences [from work] monthly." Tr. 642. In his medical source statement Dr. Simon noted Plaintiff had marked difficulties in his ability to understand and remember complex instructions, to carry out complex instructions, and to make judgments on complex work-related decisions; and moderate limitations in his ability to make simple work-related decisions, to interact appropriately with the public, supervisors, and coworkers, and to respond appropriately to "usual work situation[s] and to changes in routine work setting." Tr. 644-45. Dr. Simon stated, "work stress contributes to [Plaintiff's] anxiety" and he would expect

9 – OPINION & ORDER

Plaintiff to be absent from work as a result of his medical impairments "more than 4 days per month - possible." Tr. 646.

The ALJ found Dr. Simon's opinion to be "generally persuasive" regarding Plaintiff's marked limitations in his abilities related to complex instructions, tasks, and decisions. The ALJ, however, found Dr. Simon's opinion that Plaintiff's impairments could cause him to be absent from work more than four days per month was "not persuasive." Tr. 22. The ALJ stated that portion of Dr. Simon's opinion was "inconsistent with the longitudinal medical evidence which shows [Plaintiff's] symptoms improve with adherence to prescribed treatment." *Id.* The ALJ also stated

> [t]he timing of Dr. Simon's statement supports greater functional limitations. Dr. Simon's "statement is dated June 25, 2021. [Plaintiff's] treatment visit prior to this statement, on June 11, 2021, shows [he] was doing "a lot better" and had recently begun working for a friend. He had an AA sponsor and was attending meetings. He had quit cannabis and gotten his driver's license back.

*Id.* Although it is not entirely clear, it appears the ALJ is asserting that Plaintiff's progress around the time that Dr. Simon provided his statement suggests that it was unlikely that Plaintiff would be absent from work for four or more days per month. The ALJ's reliance on a single chart note from June 2021, however, is insufficient to reject Dr. Simon's opinion and is not supported by the record as a whole. Rather, the record reflects that Plaintiff's symptoms waxed and waned and Plaintiff did not experience consistent, continuous improvement indicating that he would be able to consistently perform full-time work without an unacceptable number of absences. For example, in April 2020 Plaintiff was found at SeaTac airport "confused, disoriented, and believed he was in Alaska." Tr. 647. Plaintiff was "malodorous with dirty bare feet, confused and making repeated statements that 'the boat went down.'" *Id*. Plaintiff "endorsed to police" and an emergency room social worker that he was suicidal and had

10 – OPINION & ORDER

attempted to hang himself. *Id.* Plaintiff was placed on a 72-hour involuntary hold due to thoughts of self harm and hallucinations. Tr. 648. Plaintiff was admitted to in-patient psychiatric care where Plaintiff stated, "he was hospitalized 3 years ago at Las Vegas Recovery Center . . . because [he] slit [his] wrists." Tr. 649. Plaintiff "was able to verbalize that he took lithium, Seroquel and lamotrigine" at the Las Vegas Recovery Center, but he "only took them for a while after discharge[;] . . . he left . . . Las Vegas and went to Florence, Oregon to live with his mother[;] and he stopped taking his medications there." *Id.* Plaintiff was started on olanzapine and lithium. Tr. 652. Plaintiff remained in in-patient treatment and "[b]y mid-July [his] mood had stabilized considerably[,] . . . [a]ll suicidal ideation had resolved and psychosis had resolved completely[,] . . . [h]e was no longer experiencing any auditory hallucinations[,] [p]aranoia and delusional content had resolved completely[, and] [h]e was quite organized [and] intellectually capable." Tr. 660. Plaintiff, however, was not discharged until September 2020 "due to lack of resources for disposition. [Plaintiff] was from out of state, and therefore, did not qualify for any of the existing supportive housing programs." Tr. 660. On September 21, 2020, however, Plaintiff was "discharged to . . . clean and sober housing." Tr. 661. Plaintiff's discharge diagnosis was "[b]ipolar disorder, most recent episode mixed, severe with psychosis." Tr. 662. In December 2020, Plaintiff "did not feel his current regimen [was] very helpful," however, on testing Plaintiff's lithium level was 'undetectable." Tr. 501, 506. Plaintiff reported to Dr. Simon in January 2021 that he "often forgets to take his medications and has difficulty keeping track of medications." Tr. 539. Dr. Simon changed Plaintiff's medication from lithium to Prozac. *Id*. In March 2021 Plaintiff reported "good med[ication] adherence," but he was "feeling hopeless and worthless" and continued to experience mild to moderate depression. Tr. 531. In June 2021 Plaintiff reported "doing a lot better," going to AA meetings, and having increased energy. Tr.

11 – OPINION & ORDER

592. In November 2021, however, Plaintiff reported "worsening of mood and depression and . . . experiencing intermittent suicidal ideation." Tr. 669. In December 2021 Plaintiff was "highly anxious, fidgeting and persistently shaking his leg," reported "heightened levels of depression and some anxiety." Tr. 678. Plaintiff was noted to "lack[] awareness of his mental health." *Id.*

The Ninth Circuit has held in the context of "mental health issues . . . [c]ycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014). The court explained "[r]eports of 'improvement' in the context of mental health issues . . . must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace." *Id.* (citation omitted). In addition, "[c]aution in making such an inference is especially appropriate when no doctor or other medical expert has opined, on the basis of a full review of all relevant records, that a mental health patient is capable of working or is prepared to return to work." *Id.* at 1017-18 (citation omitted).

Dr. Simon noted that work stress contributes to Plaintiff's mental health problems and may cause him to miss four or more days of work monthly. No medical professional has opined that Plaintiff is capable of working nor offered any opinion that contradicts Dr. Simon's opinion. In addition, Jesse Q. stated in his Adult Function Report that "[s]tress causes [Plaintiff to have] manic episodes and develops into full psychosis" including "delusions and hallucinations requiring long term hospitalization." Finally, the medical record supports Dr. Simon's opinion that Plaintiff may miss more than four days of work per month as a result of his conditions.

On this record the Court concludes the ALJ erred when he found the portion of Dr. Simon's opinion stating Plaintiff could miss four or more days of work per month was not persuasive because the ALJ did not provide clear and convincing reasons for doing so based on substantial evidence in the record.

### III. Remand

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1179 (9th Cir. 2000). When "the record has been fully developed and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

Generally, the decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the Court. *Strauss v. Comm'r*, 635 F.3d 1135, 1137 (9th Cir. 2011). The Ninth Circuit, however, has established a limited exception to this general rule. *Id.* at 1138. Under the limited exception, the Court must grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Harman v. Apfel*, 211 F.3d 1172, 1178 n.2 (9th Cir. 2000).

The Court has determined the ALJ erred when he improperly rejected Dr. Simon's opinion regarding Plaintiff's absenteeism. The VE testified that "all jobs" would be

13 – OPINION & ORDER

"eliminate[d]" for "an individual who would be absent from work at unscheduled times four or more days per month" because that is "an unacceptable absenteeism rate." Tr. 56. The ALJ did not reject the VE's testimony. After giving Dr. Simon's opinion the effect required by law together with the VE's testimony about absenteeism tolerated by employees, the Court finds Plaintiff cannot work on a regular and continuing basis and, therefore, is disabled. *See* 20 C.F.R. §§ 404.1545(b), 416.945(b)(RFC is ability to work on "regular and continuing basis"). *See also* SSR 96-8p ("regular and continuing basis" is "8 hours a day, for 5 days a week, or an equivalent work schedule"). *See also Michael S. v. Soc. Sec. Admin.*, No. 1:22-CV-00197-AA, 2023 WL 5934598, at *3 (D. Or. Sept. 12, 2023)(noting "[r]emand for benefits is appropriate where the [VE] concludes that an individual with the claimant's limitations would be unable to perform competitive employment, and that testimony is not properly credited" and remanding for an award of benefits)(citing *Smith v. Saul*, 820 F. App'x 582, 586 (9th Cir. 2020)). The Court, therefore, concludes this matter should not be remanded for further proceedings. Accordingly, the Court remands this matter to permit the Commissioner to calculate and to award benefits.

## CONCLUSION

For these reasons, the Commissioner's decision is REVERSED and REMANDED for immediate payment of benefits.

IT IS SO ORDERED.

DATED: _____July 3, 2024_____

_____
MARCO A. HERNÁNDEZ
United States District Judge